[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12406
Non-Argument Calendar

_____

D.C. Docket No. 2:15-cv-00419-WHA-GMB

JANICE DUNCAN,

Plaintiff-Appellant,

versus

STATE OF ALABAMA,
STATE OF ALABAMA DEPARTMENT OF TRANSPORTATION,
BILL FLOWERS,
in his individual capacity,
KELLY BRENDLE,
in her individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 9, 2018)

Before WILSON, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Janice Duncan appeals *pro se* the district court's grant of summary judgment in favor of the Alabama Department of Transportation (ALDOT), Kelly Brendle, and Bill Flowers (collectively, the Defendants) in her suit alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) (Title VII), and 42 U.S.C. § 1983.  Duncan asserts the district court erred in granting summary judgment as to her race discrimination claim against Brendle and Flowers, and her retaliation claim against the ALDOT.[1]  After review,[2] we affirm the district court's grant of summary judgment.

## I. DISCUSSION

### A.  Race Discrimination

Duncan contends the district court erred in granting summary judgment on her race discrimination claim against Brendle and Flowers because she established a *prima facie* case under the standard described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as well as under the "convincing mosaic" standard articulated in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.

---

[1] In the district court, Duncan did not present a race discrimination claim against the ALDOT or a retaliation claim against Brendle and Flowers.  Accordingly, to the extent she now seeks to raise these claims on appeal, she has forfeited them and we will not consider them further.  *See Blue Martini Kendall, LLC v. Miami Dade County*, 816 F.3d 1343, 1349 (11th Cir. 2016).

[2] We review *de novo* a district court's grant of summary judgment, viewing all evidence and reasonable factual inferences in the light most favorable to the nonmoving party.  *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008).  Summary judgment is properly granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

2011).  Duncan asserts Brendle's and Flowers' race discrimination caused her demotion under the cat's paw theory.  She argues the district court incorrectly determined her demotion was untainted based on Maxine Wheeler's and DeJarvis Leonard's independent investigations because Wheeler did not make a recommendation and Leonard discounted the entirety of evidence from his hearing. She contends Lamar Woodham and Leonard both lied when they said they relied on Wheeler's recommendation to demote her.  Rather, all decisionmakers relied on the tainted recommendations of Flowers and Brendle.

Where there is no direct evidence of discrimination, but only circumstantial evidence, we use the *McDonnell Douglas* framework.  *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012).  Under the *McDonnell Douglas* framework, a plaintiff first must establish a *prima facie* case of discrimination that creates a presumption the employer unlawfully discriminated against her.  *Flowers v. Troup Cty. School Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015).  If the plaintiff establishes a *prima facie* case, the burden of production then shifts to the employer to articulate a "legitimate, non-discriminatory reason" for the challenged employment action.  *Id.* If the employer satisfies this burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is merely a pretext for unlawful discrimination.  *Id.*

3

A plaintiff can also survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith*, 644 F.3d at 1328. Such "[a] triable issue exists if the record, viewed in a light most favorable to the plaintiff, presents a 'convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.*

When a claim involves an adverse employment action that occurs based on a biased recommendation by a party without decisionmaking authority, a plaintiff can establish liability under the cat's paw theory. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331-32 (11th Cir. 1999). Under that theory, if the decision-making party followed the biased recommendation without independently investigating the complaint—essentially acting as a rubber stamp of the biased recommendation— then the recommender's discriminatory animus is imputed to the decisionmaker. *See id.* However, the plaintiff must prove that the discriminatory animus behind the recommendation, and not the identified employee misconduct, was an actual cause of the adverse employment action. *Id.* When an employer makes an effort to independently investigate before making an adverse employment decision, it should not be held liable for another employee's hidden discriminatory motives. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249-50 (11th Cir. 1998).

4

However, we have not addressed the viability of the independent investigation defense in a race discrimination case since the Supreme Court's decision in *Staub v. Proctor Hosp.*, 562 U.S. 411, 416, 422 (2011).  In *Staub*, the Supreme Court, in addressing a discrimination claim under the Uniformed Services Employment and Reemployment Rights Act (USERRA), concluded an independent investigation did not relieve an employer of fault where the supervisor's biased act was intended to cause and proximately caused an adverse employment action.  *Id.* at 422.  Nonetheless, the Supreme Court stated there can be no proximate cause, and therefore no liability, if the adverse action is entirely justified apart from the biased supervisor's recommendation.  *Id.* at 421-22.

Because *Staub* considered the cat's paw theory in the context of USERRA, it did not directly overrule precedent applying the theory in the context of other statutes.  *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1335-36 (11th Cir. 2013).  In the context of the Age Discrimination in Employment Act, we have indicated that, while the cat's paw theory may be appropriate in cases in which the plaintiff is required to prove only that the protected characteristic was a motivating factor, such as in Title VII disparate treatment claims, the theory is inappropriate when the statute requires but-for causation.  *Id.*

Duncan's race discrimination claim fails whether or not we apply the cat's paw theory and independent investigation defense.  Assuming the cat's paw theory

applies, the undisputed evidence in the record indicates that any alleged bias was not the proximate cause of her demotion. *See Staub*, 562 U.S. at 417-418.  Duncan admitted that, in 2013, she changed her management style, implemented new rules, and started walking around and monitoring employee conversations, which led to increased complaints.  This conduct led to a work environment that her subordinates described as stressful and uncomfortable.  Duncan admitted she looked through employee desks when she needed to find something and she allowed one employee to have access to an e-mail which contained reference to the personal medical information of another employee.  Duncan also admitted she knew that Brendle planned on reallocating work assignments and Duncan still handed out her own proposed assignments, although she termed this a "misunderstanding," and not intentional.

This admitted conduct formed the basis, in large part, for Wheeler's conclusion that Duncan violated several of the ALDOT rules, and for Leonard's conclusion that demotion was warranted, based on the same rule violations.[3]  The ALDOT rules allow for suspension or discharge for a first instance of more serious rule violations, such as disruptive behavior.  Accordingly, Woodham's ultimate

---

[3] While Duncan correctly notes that the district court erred in stating Wheeler recommended her demotion, Leonard and Woodham did not rely on a mistaken belief that Wheeler had recommended demotion.  The district court did not err in granting summary judgment in favor of Brendle and Flowers, regardless of this mistaken statement. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (explaining the district court's decision may be affirmed if the result is correct, even if the court relied upon an incorrect ground or gave a wrong reason).

6

decision to demote Duncan was "entirely justified" by the undisputed evidence in the record, apart from any bias tainting Flowers' initial recommendation. *See Staub*, 562 U.S. at 421-22.

Assuming the cat's paw theory does not apply and that Duncan established a *prima facie* case of race discrimination under the *McDonnell Douglas* standard, she failed to meet her burden to establish the Defendants' proffered reason for her demotion was pretextual. *See Flowers*, 803 F.3d at 1336. Duncan referred to pretext only in relation to her Title VII claim, suggesting the record demonstrates retaliation because 2013 was the only year in which she was disciplined. This allegation does not demonstrate the Defendants' proffered reason for demotion—multiple rule violations in 2013—was pretextual. Likewise, the record, even viewed in the light most favorable to Duncan, does not otherwise present a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination in the decision to demote her. *See Smith*, 644 F.3d at 1328.

## B. Title VII Retaliation

Duncan asserts the district court erred in granting summary judgment on her retaliation claim against the ALDOT because she established a causal connection between an internal complaint she filed with the ALDOT and her demotion. Because the ALDOT had notice of her May 2013 internal complaint and the EEOC

charge she filed in October 2013, Duncan argues that Woodham is deemed to have had knowledge of them when he authorized her demotion, and therefore, causation is established.

Title VII prohibits an employer from retaliating against an employee because the employee "opposed any practice" made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).   Absent direct evidence of discrimination, we employ the *McDonnell Douglas* framework when analyzing claims for retaliation.  *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).  Under this framework, a plaintiff establishes a *prima facie* case of retaliation by showing that she: (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) established a causal link between the protected activity and the adverse action. *Id.* at 1307-08.  She must show the causal connection under a but-for standard, requiring a showing that she would not have suffered the adverse employment action if she had not engaged in the protected conduct.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action."  *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quotations omitted).

Even viewing the evidence in the light most favorable to Duncan, she failed to establish a *prima facie* case of retaliation.  Although the record indicates the

decisionmaker had actual knowledge that Duncan filed some type of complaint with the ALDOT, there is no evidence in the record that Woodham was actually aware the internal complaint raised any allegations of race discrimination, such that it constituted a protected expression. *See Clover*, 176 F.3d at 1354.

However, even assuming Woodham was actually aware Duncan had engaged in protected conduct by filing the internal complaint, the undisputed evidence demonstrates Duncan's demotion was justified and not motivated by bias. Accordingly, Duncan failed to meet either the proximate cause standard under *Staub* or *Nassar*'s heightened but-for causation standard. *See Staub*, 562 U.S. at 422; *Nassar*, 570 U.S. at 362. Additionally, even assuming that Duncan had established a *prima facie* case of retaliation, she failed to meet her burden of establishing the Defendants' proffered reason for her demotion was pretextual. *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310-11 (11th Cir. 2016) ("If the employer is able to advance legitimate reasons for the adverse employment action, the burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the employer's reasons are pretextual.").

## II.  CONCLUSION

The district court did not err in granting summary judgment in favor of the Defendants. Thus, we affirm.

**AFFIRMED.**

9